UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHARON HORR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:13-CV-358 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

An administrative law judge denied Sharon Horr's application for Social Security disability insurance benefits. Horr claims that the ALJ erred when she ignored the opinion of Horr's treating physician who wasn't even referenced in the ALJ's opinion. A remand is required so that the ALJ can fully evaluate the treating physician's opinion.

**BACKGROUND**

Readers looking for a more extensive discussion of Horr's medical record are directed to the detailed summaries in the ALJ's decision [R. 16-29] and in Horr's opening brief [DE 20 at 7-11]. Rather than simply reiterating those summaries, I will give a brief overview of the history of Horr's disability claim.

Horr has a large number of impairments but the only ones relevant here are issues relating to her severe back problems. Horr's treatment for back pain is evidenced in the record as early as September of 2005. [R. 493.] Horr underwent her first spinal

1

surgery in 2006 to fuse her L5-S1 joint to alleviate leg and lower back pain. [R. 488.] Dr. Robert M. Shugart, M.D., an orthopedist with Fort Wayne Orthopedics, LLC, performed the surgery and served as her primary spine doctor throughout the rest of the record. On September 12, 2006, Horr returned to Shugart for a follow-up visit. Shugart opined that, although Horr was still having leg pain and spasms, her wound and x-rays looked good and scheduled a check-up in 8-12 weeks. [R. 488.] At that check-up on January 20, 2007, Shugart found that Horr's symptoms had improved and that she was doing well. [R. 243.] He gave her the OK to pursue chiropractic treatment.

In June 2011, Horr returned to Shugart with a resurgence of back pain. [R. 333.] This time the pain was in her upper extremities, neck, and shoulders. [*Id.*] Shugart noted that images of Horr's cervical spine demonstrated muscular strain and showed moderate degenerative changes in the discs at levels C4-C5 and C6-C7. [R. 333-334.] Over the next two months, Horr's examinations results, x-rays, MRI, and a failed cervical epidural intervention indicated she needed further surgery. [R. 390-93.] At the end of July 2011, Shugart performed an anterior cervical decompression surgery to fuse Horr's 4-5 and 5-6 cervical vertebrae. [R. 409.]

On November 9, 2011, Horr visited Dr. Daniel Roth, D.O., a pain management specialist, for follow up treatment regarding her continued back pain. [R. 524.] Upon initial examination, Roth concluded that Horr's neck and lower back surgeries had failed. [R. 526.] Dr. Roth also found Horr had various points of cervical tenderness, trigger points, positive Spurling's Test, decreased range of motion, and painful range of

motion. [*Id*. at 525-26.] He found evidence of chronic cervical and lumbar radiculopathy, arthropathy, and bilateral sacroiliitis. [*Id*.] Roth created a treatment plan that included injections for cervical, lumbar, and sacral inflammation and pain. [*Id*. at 526] He started Horr's treatment with a November 15, 2011, bilateral cervical facet injection procedure to alleviate her neck, shoulder, and arm pain. [R. 472.] At the January 4, 2012, follow-up, Horr reported that the injection had improved her pain symptoms by 80%, but the pain had evidently returned as she reported at that time that her pain was a 7 on a pain scale of 0-10. [R. 521.] Horr's cervical examination results were the same as in November 2011, and Dr. Roth confirmed his previous diagnoses. [*Id*. at 521-22.]

Horr applied for disability insurance benefits in February 2012, alleging a disability onset date of May 20, 2008. She last met the Social Security Act's requirements for date of last insured on September 30, 2011. The ALJ conducted a hearing on August 20, 2012. [R. 19.] Shortly after the hearing, Horr faxed the records of her visits with Dr. Roth to the ALJ after that hearing. [*See e.g.* R. 521.] The ALJ admitted them into the record but never addressed them in her written opinion denying benefits. [R. 16-39.] In the opinion denying benefits, the ALJ found that Horr had a multitude of severe impairments but that she nonetheless retained a residual functional capacity that allowed her to do a number of jobs in national economy. But to repeat, no mention was made by the ALJ of Dr. Roth's opinion.

## DISCUSSION

If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. See 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id*.

Horr objects to the ALJ's decision on four grounds: 1) the ALJ erred by not incorporating the limiting effects of chronic infections, cervical spine movements, and migraine triggers; 2) the ALJ improperly evaluated obesity; 3) the ALJ erred by failing to provide an explanation that Horr has exhibited no "period of disability"; and 4) the ALJ failed to acknowledge and give controlling weight to Dr. Daniel Roth, Horr's treating osteopathic doctor.

From my perspective, there is simply no getting around the final issue — ignoring Dr. Roth's opinion. It appears that the parties assume that he's a treating physician, so I'll assume the same. And on that basis, I must remand because an ALJ cannot completely ignore the opinion of a treating physician with no explanation.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

4

not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Once well-supported contradicting evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to weigh. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the biases that a treating physician may develop such as friendship with the patient. *Oakes v. Astrue*, 258 Fed.Appx 38, 43-44 (7th Cir. 2001); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). If an ALJ decides not to give controlling weight to a treating physician's opinion, however, she must explain her reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is cause for remand. *Id.*

The Commissioner doesn't appear to take issue with the fact that Roth is a treating physician. Instead, the Commissioner argues that the treating physician rule shouldn't apply here because Roth's opinion isn't really a medical opinion because he doesn't opine on Horr's limitations. [DE 26 at 7.] First, I don't think that's factually accurate because his notes detail a number of different, seemingly functional test results (normal gait, normal heel/toe, normal reflexes, etc.). [R. 522, 525-526.] But even so, the regulations don't require a physician to opine on limitations. In fact, they caution against doing so since "disability" is a question ultimately left to the Commissioner. 20 C.F.R. § 404.1527(a)(2), (d)(1). Medical opinions are statements about the nature and

5

severity of impairments including symptoms, diagnosis and prognosis, what you can still do, and restrictions. 20 C.F.R. § 404.1527(a)(2). Roth went through Horr's history in detail, administered a thorough examination including a discussion of her symptoms, and then detailed his "impressions" where he diagnosed Horr with various conditions. He then formulated a treatment plan. He went on to administer treatment and then saw Horr again at a follow-up visit to determine whether that treatment was effective. To me, there is little doubt that Roth's opinions are relevant medical evidence and constitute a medical opinion.

Having found that Roth gave a medical opinion, and assuming that Roth is a treating physician, the ALJ erred in ignoring his opinion without any explanation. Roth examined Horr and put forth the following impressions of her condition: failed neck and lower back surgery, chronic cervical radiculopathy at C7 and C8, cervical facet arthropathy bilateral, lumbar radiculopathy and arthropathy, and sacroiliitis. [R. 526.] The ALJ didn't mention this evaluation, even though it was within the record and was one that Roth, a pain specialist who had treated Horr, was entirely competent to offer. Roth also administered cervical facet injections to treat Horr's back pain. [R. 472.] The ALJ didn't address this treatment, either. Not only did the ALJ fail to explain why she discounted Roth's opinion, she failed to mention his opinion at all, leading me to wonder whether she even evaluated it. While it is true that Dr. Roth did not see Horr until a month and a half after the last insured date, Dr. Roth's opinion still sheds some light on whether Horr was disabled during the insured period. *Estok v. Apfel*, 152 F.3d

636, 640 (7th Cir. 1998) (opinions of treating physicians should be given weight if corroborated by evidence from the insured period, even if opinions rendered after date of last insured); *Lavoie v. Colvin*, No. 13-C-2560, 2015 WL 393414, at *8 (N.D.Ill. Jan. 27, 2015) (remanding to evaluate treating physicians' opinions offered after date of last insured, but pertaining to condition existing during claim period).

To utterly ignore Dr. Roth's opinion is problematic on two levels. First, as I mentioned above, an ALJ's failure to explain why she is discounting a treating physician's opinion is cause for remand. *Scott*, 647 F.3d at 740. Second, an ALJ must build a logical bridge from the evidence to the conclusion. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). In other words, even though the evidence relied on by the ALJ to reach her conclusions may constitute contradicting evidence such that she could discount Roth's opinion, the ALJ must explain why that's the case. Here, the ALJ simply didn't address Roth's opinion at all, much less determine how much weight to afford it. And in the absence of any reasons for discounting, or indeed, any mention of Roth's opinion, I can't affirm her decision. *See Scott*, 647 F.3d at 740. Maybe Roth's impressions will do nothing to change the final outcome here, but the ALJ must at least explain why that's the case.

Because this issue is enough for remand, there is no need to discuss the other issues raised by Horr at this time. But the ALJ should address Horr's other arguments as appropriate. In addition, the ALJ may determine that Dr. Roth's opinion can be discounted by the fact that Horr didn't even see her until after the last insured date. But

7

given how close in time the Dr. Roth's treatment was to Horr's last insured date, it was an error to fail to address it all.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: March 12, 2015        s/Philip P. Simon
                                                           PHILIP P. SIMON, CHIEF JUDGE
                                                           UNITED STATES DISTRICT COURT